THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANTONIO MARTÍNEZ DÍAZ, k/a ÑECO, Defendant and Appellant.

No. CR-63-317.     Decided May 29, 1964.

458

*José Rafael Gelpí* and *Sergio A. Peña Clos* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *J. F. Rodríguez Rivera, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The prosecuting attorney filed an information against Antonio Martínez Díaz for the offense of murder in the first degree charging him with having battered Alvaro Báez Rodríguez with a bat inflicting serious blows causing his death. The jury found him guilty of murder in the second degree and he was sentenced to an indeterminate sentence of 10 to 15 years in the penitentiary. He appealed. On appeal he assigns five errors:

1—He alleges that the court committed error in admitting as formal a verdict in which the offense for which appellant was found guilty was not expressly stated and in order-

ing the foreman of the jury to insert the word "murder" in said verdict. After instructing the jury on the acquittal or three possible verdicts of guilty—murder in the first degree, murder in the second degree, and homicide—the jury withdrew to deliberate. After the deliberation the following incident occurred:

"JUDGE:

The jury informed the marshal that it wanted to come to the courtroom. I ask whether you have agreed on the case.

FOREMAN:

Yes, Your Honor.

JUDGE:

Without stating the agreement, how many jurors concur in the agreement?

FOREMAN:

Eleven.

JUDGE:

Marshal, take the documents and the verdict and pass them to the Court.

The marshal delivers the documents and verdict.

JUDGE:

Mr. Foreman, a word is missing in your decision; the verdict must be corrected. You may correct it in the courtroom. It is a clerical error. Where it cites the degree and not the offense.

The Foreman of the Jury corrects the verdict.

JUDGE:

Thank you. Defendant, please stand up. Secretary, please read the verdict.

SECRETARY:

Crim. G-61-1045. *The People of Puerto Rico* v. *Antonio Martínez Díaz,* known as Ñeco, of Murder in the First Degree. 'We, the Gentlemen of the Jury, find defendant, Antonio Martínez Díaz, known as Ñeco, guilty of Murder in the Second Degree.' San Juan, Puerto Rico, June 8, 1962, signed by Enrique Chavier, Foreman of the Jury.

JUDGE:

I ask you, gentlemen of the jury, is that the verdict of at least eleven of the twelve of you?

FOREMAN:

Exactly.

JUDGE:

The Court admits it because it is the formal verdict and rendered according to law and in consequence thereof finds Antonio Martínez Díaz guilty and convicted of Murder in the Second Degree. When do you want the judgment, Your Honor? For the record, the correction of the verdict made in the courtroom said, 'guilty second degree' without stating the crime. Proceed. Well, ladies and gentlemen of the jury, thank you very much. You may withdraw until next Monday morning at 9:00 o'clock.

MR. GELPÍ:

What was missing, Your Honor?

JUDGE:

'Murder' was missing, it read 'guilty second degree.'

MR. GELPÍ:

The word 'murder' was not stated.

JUDGE:

It said: 'We, the gentlemen of the jury, find defendant, Antonio Martínez Díaz, known as Ñeco, guilty second degree.' The word 'murder' was not stated; the 'second' was stated.

MR. GELPÍ:

We understand that said verdict should not have been accepted because it was not formal since the essential part of the crime was the murder, and it was not stated in the verdict by the Foreman of the Jury, Mr. Chavier. That is, here we had a verdict which said: 'We, the gentlemen of the jury find defendant Antonio Martínez Díaz, known as Ñeco, of the crime of 'guilty second degree.' The word 'murder' is not mentioned, which is the essence of the crime and it necessarily entailed that the jury shall return to deliberate and bring back a formal verdict adjusted to law. There is no crime of second degree in Puerto Rico. This party understands that the jury would have returned to deliberate and not that the foreman write the word 'murder.' This attorney heard Your Honor tell the foreman that

the degree was missing. As this party understands it seems it was a mistake of Your Honor.

JUDGE:

What was missing was the offense.

MR. GELPÍ:

I heard you say that the degree was missing. The verdict is irrelevant and irregular because it is not a verdict of murder in either first or second degree." (Tr. Ev. 228–231.)

▮ It is indispensable to explain that the magistrate presiding the proceeding did not indicate to the jury to insert the word "murder" in the verdict, as understood by the assignment of error, but limited himself to call its attention as to the omission of "a word in your decision" and urge the jury to correct the same. Moreover, once the corresponding insertion was made he inquired again whether the verdict of murder in the second degree represented the agreement of the majority and then he proceeded to admit it because it was formal and rendered according to law.

In *People* v. *Piazza,* 60 P.R.R. 561 (1942), the jury delivered a verdict to the secretary which read: "We, the gentlemen of the jury, find defendants Maximino Piazza and Domingo Piazza . . . of the crime of murder in the second degree," without expressly referring as to whether defendants were guilty or not guilty. In the presence of this situation the court ordered the jury to return to the jury room to correct the verdict. Within a short time, the jury returned to the court and rendered a verdict which had been completed by the insertion of the word "guilty" in the blank space. The court properly overruled a motion for mistrial on the ground that the verdict rendered was void. We stated that the explanation that the word "guilty" had been inadvertently omitted was a plausible one and we commented that "If the jury had intended to bring in a verdict of not guilty, it would clearly have not inserted in its verdict the words 'in the second degree.'" (At p. 569.) We consider a similar situation in

*People* v. *Velázquez*, 69 P.R.R. 316 (1948), in which the jury failed to specify whether it found defendant guilty or not guilty of the offense of aggravated assault and battery— the proceeding had started with an information for attempt to kill—and we said that the order of the court to the jury in order "that they should state correctly their opinion" did not impair appellant's rights. *Cf. People* v. *Rodríguez*, 69 P.R.R. 507 (1949) presents a different situation, that of a verdict in disagreement with instructions of the court as to the probable verdicts.

Briefly, it is important to determine the real intention of the jury. In the present case we are not concerned with the omission of appellant's verdict of guilty or not guilty because in the first occasion the verdict delivered clearly stated that defendant was guilty of a crime which was denominated "of the second degree." Considering that in the instructions the three possible verdicts aforementioned had been named, and that the offense of voluntary manslaughter is not divided into degrees, the alternative in degrees evidently referred to murder. As we stated in *People* v. *Ascencio*, 16 P.R.R. 337 (1910), in qualifying a verdict that read, "We, the jury, . . . find defendants, Carlos María Asencio 'guilty' in the second degree, and Francisco Vélez 'not guilty' of the crime of arson, . . . if the entire verdict be read, the conclusion will be reached that, although it lacks clearness, this defect is not of such a nature as to imply the nullity of the document." (At p. 338.) Even more can be said in this case. The jury's omission did not render its intention void.

2–4—Certain instructions given to the jury are challenged. In relation to the self-defense theory, (a) in order that it may prosper it is required that defendant, on taking away the life of assailant, has been under immediate and imminent danger of his life or great bodily injury; and (b) it is necessary that the person who invokes it has no blame in the struggle in which the victim was killed. Fur-

thermore, that if the jury had any doubts as to whether a crime in the first or second degree or voluntary manslaughter had been committed, the benefit of the doubt should be given to defendant and find him guilty of the lesser offense, that is, manslaughter.

As we stated in *People* v. *Túa*, 84 P.R.R. 37 (1961), leading case on the matter, in order that the self-defense theory will prosper it is only required that a reasonable person of moderate courage believe that his life was in danger and that there was a reasonable apprehension for said belief, that he was in imminent and immediate danger of his life or great bodily harm; the occurrence of an assault is not indispensable. However, the instructions must be considered as a whole, not as mere isolated passages or phrases picked out that give it a mistaken connotation. The trial judge's instructions having been examined, and appellant himself admits it, it appears that predominantly the judge told the jury that death may be caused when the killer is under apparent danger, but capable of producing in him said founded belief to which we have referred.

As to the instruction about the killer's absence of guilt in the *struggle* in which the victim was killed no prejudice could have been caused to appellant, since the evidence offered does not contain the least indication that a "struggle" occurred. The evidence for the prosecution tended to establish that Martínez assaulted the victim without there being any provocation; that for the defense, that the action was the result of verbal insults uttered by the deceased. However, it is not superfluous to repeat the warning we made in *Túa*, *supra*, that the courts should abstain from giving instructions to the jury as to the principles of law applicable to the state of facts not arising from the evidence. The practice of reading indiscriminatingly from the book or manual of instructions should not be favored. It is advisable that in that

event only such instructions as are justified by the evidence admitted be given.

■ The other assignment of error in the instructions is evidently frivolous. The trial court instructed that in case of reasonable doubt as to the innocence or guilt the benefit of the doubt be given to defendant, and he should be acquitted. It was in case he was found guilty and the jury had any doubt as to the qualification of the offense, that it should find him guilty of the lesser offense. We do not understand how he could have been prejudiced.

5—The prosecuting attorney offers the testimony of the victim's wife who was an eye-witness of the assault which resulted in the death. On cross-examination the defense requested and was given a copy of the statement offered by said witness, during the preliminary investigation, three days after the occurrence of the facts. The document was used to impeach her testimony as to certain points. During the presentation of the evidence, the defense offered said statement and it was admitted in evidence. It was read to the jury and immediately the judge instructed it as follows: ". . . this statement has been offered by the defense and admitted by the Court, the sole purpose of the defense being to impeach the testimony offered before you by the witness in a statement . . . on those points for the purpose of discrediting her testimony in relation to those points on which she was confronted in [the] light of said statement. Nothing contained in said statement constitutes explanatory evidence as to the cause you are judging . . . you will analyze her statement, which constitutes evidence, if any, you will analyze it in the light of said written statement offered now by the defense. In relation, I repeat, with said points which were confronted and then you will weigh and give it whatever credit you consider proper in the light of said statement."

■ At the time of delivering the case to the jury for deliberation the judge instructed it to take to the jury room, among other evidence, defense's exhibit No. 1, which was precisely the sworn statement to which we have referred. Again he stated the scope and purpose for which it was offered and admitted. No objection was made to this action.

Relying on *People v. Ramos*, 84 P.R.R. 542 (1962), it is indicated that the trial court erred in delivering to the jury and permitting it to have during the deliberations the written statement of the deceased's wife. In *People v. Ramos, supra*, as well as in *People v. Cruz*, 87 P.R.R. 124 (1963); *People v. Santos*, 87 P.R.R. 593 (1963); *People v. Couret Martínez*, 89 P.R.R. 56 (1963); *People v. Valentín Santana*, 89 P.R.R. 283 (1963); *People v. Hernández Rodríguez*, 89 P.R.R. 754 (1964), and *People v. González*, per curiam decision of January 17, 1964, we dealt with defendants' written confessions presented in evidence and which were delivered to the jury as part of the documentary evidence admitted. Explaining the reason for the prohibition on "depositions" contained in § 274 of the Code of Criminal Procedure, 34 L.P.R.A. § 783, corresponding to Rule 140 of the Rules of Criminal Procedure of 1963, now in force, we said, referring to defendant's confession, that it is unfair that the jury should have before it a written document that it can read and reread as many times as it wishes and in which the defendant admits the commission of the offense charged against him, while it has only a recollection of the oral testimony presented at the trial in his defense.[1] Furthermore, we have invariably refused to reverse a judgment on this ground unless it has been proved that the action in permitting the "deposition" to be taken to the jury has been prejudicial.

■ The present case does not deal with a defendant's confession but with a piece of evidence offered by the defense

---

[1] For the origin of this rule of exclusion in the Common Law, see, Leavitt, *The Jury at Work*, 13 Hastings L.J. 415, 420–425 (1962).

itself for the limited purpose of impeaching the testimony of a witness for the prosecution. We have examined the oral testimony offered by the deceased's widow. It is substantially identical with the version offered by the rest of the evidence for the prosecution.[2] But it is evident that the fact that the jury had the written statement during the deliberations not only could not have prejudiced appellant, but also it must have necessarily benefited him, because although it was presented for the limited purpose of impeachment, reference is made therein to two facts which the witness failed to mention during her appearance in court and which tend to favor the theory of self-defense, namely, that while she was at home about six o'clock in the afternoon—the facts occurred an hour later—defendant passed in his automobile in front of her house "and my husband started to argue with him in a loud voice, but he drove away in his car," and on arriving at the place of the crime "my husband went to the bar of this man herein . . . and when he arrived there he tried to get out of the automobile and I held him to prevent him from getting out because I had seen the [defendant's] car there and I begged my husband not to get out and he paid no attention to me . . . ." On the other hand, although the trial was held three months after the decision in *People* v. *Ramos*, *supra*, the defense did not call the attention to the court. He can not complaint now for the first time on appeal.

Since none of the errors assigned were committed, the judgment rendered by the Superior Court, San Juan Part, on June 22, 1962 will be affirmed.

---

[2] In California where § 274 of the Code of Criminal Procedure originated, the Rule in force is that the verdict will not be altered, in both civil and criminal cases, if the deposition is substantially identical with the rest of the evidence. *Davenport* v. *Waite*, 346 P.2d 501 (1960); *Quiring* v. *Zamboni*, 307 P.2d 650 (1957).